**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No.: 1:10-cr-00644-JRR** |
| **CHRISTOPHER LEE FOSTER,** | |
| ***Defendant.*** | |

**MEMORANDUM OPINION AND ORDER**

Pending now before the court is Defendant Christopher Lee Foster's Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)(i). (ECF Nos. 186, 192; the "Motion.")[1] The court has reviewed all papers; no hearing is necessary. Local Rules 105.6, 207 (D. Md. 2025). For the reasons that follow, the Motion will be denied.

## I. BACKGROUND

Mr. Foster is an inmate serving a 240-month term of imprisonment. (ECF No. 139.) Mr. Foster is currently housed at FCI Butner Medium, and he has served approximately 175 months of his sentence. *Id.* at p. 2. His projected release date is February 12, 2028.[2]

On April 29, 2010, Mr. Foster and his accomplices agreed to, and subsequently did, rob a convenience store in Salisbury, Maryland. (ECF No. 92, at p. 4.) "During the robbery, Foster wore a ski mask and black clothing and threatened force and injury against the [convenience store's] employees." *Id.* "A firearm was brandished during this robbery." *Id.* Additionally, on May 10, 2010, Mr. Foster and his co-defendant agreed to, and subsequently did, rob an individual

[1] After Mr. Foster, *pro se* at the time, filed his motion for compassionate release at ECF No. 186, counsel entered an appearance and filed a supplemental motion for compassionate release on Mr. Foster's behalf. (ECF No. 192.) The court construes both filings and the arguments therein and refers to them together as the Motion.

[2] Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (last visited October 16, 2026); *see United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) (noting that courts "routinely take judicial notice of information contained on state and federal government websites").

of marijuana in Salisbury, Maryland. *Id.* "Foster possessed and brandished a firearm," a sawed-off shotgun, "during this robbery." *Id.* On October 19, 2010, Mr. Foster was subsequently charged by indictment with 12 counts. (ECF No. 1.)

On May 12, 2011, Mr. Foster pled guilty to Hobbs Act robbery (18 U.S.C. § 1951(a)) and possession of a firearm in furtherance of a crime of violence (18 U.S.C. § 924(c)). (ECF No. 92 at p. 2.) Pursuant to the parties' Rule 11(c)(1)(C) plea, the parties stipulated to a sentence of 240 months of imprisonment. *Id.* at pp. 6–7. This court subsequently imposed a 240-month sentence, consisting of 156 months for Hobbs Act robbery, and 84 months for firearm possession. (ECF No. 139.)

Mr. Foster now moves the court to reduce his sentence and provide compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) based on his mother's health and his rehabilitation efforts, which he argues demonstrate extraordinary and compelling reasons for compassionate release. (ECF Nos. 186, 192.)

## II. <u>LEGAL STANDARD</u>

Ordinarily, "[t]he court may not modify a term of imprisonment once it has been imposed.'" 18 U.S.C. § 3582(c). "However, Congress created an exception to that general rule when 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Section 3582(c)(1)(A), as amended by the First Step Act, provides in relevant part:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case.—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully

> exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). Therefore, when considering a motion for compassionate release, the court "must determine: (1) whether extraordinary and compelling reasons warrant such a reduction; and (2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023) (citing 18 U.S.C. § 3582). "Only after this analysis may the district court grant the motion if (3) the relevant 18 U.S.C. § 3553(a) factors, to the extent they are applicable, favor release."[3] *Id.*

"[A] district court is not required to address each of a defendant's arguments when it considers a motion for compassionate release under § 3582(c)(1)." *United States v. Jenkins*, 22 F.4th 162, 170 (4th Cir. 2021). The Fourth Circuit has explained:

> Instead, we have explained that "how much of an explanation is required depends upon the narrow circumstances of the particular case." *Id.* at 170. And a district court's explanation that "implicitly respond[s]" to the defendant's arguments or counterpoints will

[3] As the Fourth Circuit has recently summarized:

> The 3553(a) factors include: 1) the nature and circumstances of the offense and history and characteristics of the defendant; 2) the need for the sentence imposed; 3) the kinds of sentences available; 4) the kinds of sentences and sentencing ranges for the offense; 5) policy statements by the Sentencing Commission; 6) the need to avoid unwarranted sentencing disparities amongst similarly situated individuals; and, 7) the need to provide restitution to victims of the offense.

*United States v. Wable*, 181 F.4th 441, 446 (4th Cir. 2026). "A district court need not provide an exhaustive explanation analyzing every § 3553(a) factor." *United States v. Jenkins*, 22 F.4th 162, 170 (4th Cir. 2021).

> typically be sufficient for purposes of appellate review. *Bethea*, 54 F.4th at 837 (cleaned up). "[T]he touchstone in assessing the sufficiency of the district court's explanation must be whether the district court set forth enough to satisfy our Court that it has *considered* the parties' arguments and has a *reasoned basis* for exercising its own legal decisionmaking authority, so as to allow for meaningful appellate review." *United States v. Hargrove*, 30 F.4th 189, 199 (4th Cir. 2022) (cleaned up).

*United States v. Washington*, 161 F.4th 816, 821 (4th Cir. 2025).

## III. ANALYSIS

As set forth above, Mr. Foster moves this court for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons," specifically with respect to his mother's health issues and his own rehabilitation efforts.[4] (ECF No. 186 at p. 8, 17; ECF No. 192 at p. 7, 11.)

### A. Exhaustion of Administrative Remedies

Section 603(b) of the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to file a motion for compassionate release after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [("BOP")] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The Fourth Circuit has explained:

[4] Mr. Foster's supplemental motion for compassionate release at ECF No. 192 does not reassert an argument set forth in his original *pro se* motion for compassionate release (ECF No. 186) regarding the effect of COVID-19 on his incarceration. (ECF No. 192.) In his original *pro se* motion, Mr. Foster argues, *inter alia*, that the pandemic "made his term in [c]ustody way harsher and [m]ore punitive than this honorable Court or the Federal Bureau of Prisons [c]ould have anticipated." (ECF No. 186 at p. 13.) Mere incarceration during the COVID-19 pandemic, without more, is insufficient to show extraordinary and compelling circumstances. *See, e.g.*, *Brown*, 78 F.4th at 128 (holding that "[t]o establish that the risk posed by COVID-19 presents an extraordinary and compelling reason for release, a defendant must allege that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that his preexisting medical condition increases his risk of experiencing a serious, or even fatal, case of COVID-19.") (citation modified and omitted); *United States v. Johnson*, No. CR ELH-99-352, 2023 WL 7130950, at *20 (D. Md. Oct. 27, 2023) (explaining that "to the extent that [the defendant] relies on COVID-19 as a basis for his release, he must establish some ground, such as a qualifying medical condition, to demonstrate that he is particularly susceptible to severe illness from COVID-19 and thus eligible for compassionate release"). Mr. Foster fails to make the necessary showing here.

> [Section] 3582(c)(1)(A) "outlines two routes" for requesting compassionate release in the district court, "one of which does not require exhaustion of administrative remedies." *Muhammad*, 16 F.4th at 131. Specifically, the defendant may move for compassionate release "after [he] has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier*." 18 U.S.C. § 3582(c)(1)(A) (emphases supplied). Stated differently, "the threshold requirement" to file a compassionate release motion is "satisfied if a defendant requests the [BOP] to bring a motion on [his] behalf and *either* fully exhausts all administrative rights to appeal the [BOP]'s decision *or* waits 30 days from the date of [his] initial request." *Muhammad*, 16 F.4th at 131 (emphases in original). In short, the defendant is not required to exhaust his administrative remedies with the BOP *at all* beyond making the initial request for compassionate release. Therefore, we see no reason to limit his motion for compassionate release in the district court to only those grounds for compassionate release he identified in his request to the BOP.

*United States v. Ferguson*, 55 F.4th 262, 268 (4th Cir. 2022), *cert. denied,* 144 S. Ct. 1007 (2024) (emphasis in original) (footnote omitted).

Here, the Government does not dispute that Mr. Foster adequately exhausted his administrative remedies by filing an administrative request for compassionate release with the Warden of FCI Tucson,[5] and more than 30 days have passed since the request was submitted. (ECF Nos. 186-1, 192.) Having reviewed the record, the court is satisfied that Mr. Foster has properly exhausted his administrative remedies, and the Motion may be decided on its merits.

**B. Extraordinary and Compelling Reasons**

In general, "the district court enjoys broad discretion in conducting § 3582(c)(1)(A) analysis." *Jenkins*, 22 F.4th at 169. Nonetheless, as discuss above, "[t]o be eligible, the court must find that relief is warranted because of 'extraordinary and compelling reasons' and

[5] Although he is now housed at FCI Butner Medium, Mr. Foster originally made his administrative request for his Motion when he was housed at FCI Tucson.

'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024) (quoting *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021)). "Extraordinary and compelling reasons," while not defined by Congress, is a "demanding standard;" the "criteria are not empty vessels." *Fernandez v. United States*, 608 U.S. 411 (2026).

The Policy Statement at issue is codified at U.S.S.G. § 1B1.13 and titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)." Section 1B1.13(b) specifically pertains to "extraordinary and compelling reasons" and identifies multiple bases for finding such extraordinary and compelling reasons. Relevant here, extraordinary and compelling reasons may exist based on family circumstances of the defendant. U.S.S.G. § 1B1.13(b)(3)(C). Specifically, "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" constitutes an extraordinary and compelling reason. *Id.* Extraordinary and compelling reasons may also exist based on what is referred to as "other reasons"—where the "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). Mr. Foster invokes both grounds to support Motion.

***1. Family Circumstances***

Consistent with the relevant provision of § 1B1.13(b), for Mr. Foster's family circumstances to constitute an extraordinary and compelling reason for release, Mr. Foster must show his mother is "incapacitated," and that he is her "only available caregiver." *See* U.S.S.G. § 1B1.13(b)(3); *United States v. Burney*, No. CR ELH-15-0305, 2026 WL 1541155, at *13 (D. Md. June 1, 2026) (holding that "under this section, a court examines: (1) The parent's incapacitation;

and (2) whether the defendant is the only available caregiver"). "Notably, 'incapacitation' is a high bar." *Burney*, 2026 WL 1541155, at *13. While § 1B1.13 does not define "incapacitation" of a family member, "[c]ourts have interpreted incapacitation in this context to mean that the individual is completely disabled and cannot carry on any self-care or is totally confined to a bed or chair."[6] *Burney*, 2026 WL 1541155, at *13 (citation modified) (quoting *United States v. Howard*, NJR-21-30187-1, 2025 WL 1684262, at *2 (S.D. Ill. June 16, 2025)).

A defendant is generally required "to provide specific evidence establishing incapacitation." *United States v. Bailey*, No. CR ELH-16-396, 2026 WL 100565, at *13 (D. Md. Jan. 14, 2026); *see also United States v. Stamper*, No. 3:20-CR-00295-FDW-DCK, 2024 WL 3512807, at *5 (W.D.N.C. July 23, 2024) (finding that, "[w]hile the Court does not deny his mother's health concerns as legitimate, and empathizes with her difficulties, Defendant does not provide additional verifiable medical documentation establishing his mother is incapacitated and in need of a full-time caregiver"). Here, Mr. Foster describes his mother, who lives alone, as

---

[6] Further to the high standard for incapacitation, other courts in this circuit have referred to the Bureau of Prison's Program Statement 5050.50. One such court remarked:

> The program statement defines "incapacitation" as "a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse ... is completely disabled, meaning that the spouse ... cannot carry on any self-care and is totally confined to a bed or chair." United States v. Collins, No. 15-10188-EFM, 17-10061-EFM, 2020 WL 136859, at *4 (D. Kan., Jan. 13, 2020) (quoting BOP Program Statement § 5050.50 at 10).
>
> While the program statement is not binding on the courts, it indicates the severity of incapacitation that the BOP finds necessary in determining that a defendant has demonstrated an extraordinary and compelling reason for compassionate release, and many courts, including this one, look to the program statement for guidance.

*United States v. Mahone*, No. 5:12-CR-27, 2025 WL 495376, at *4 (W.D. Va. Feb. 13, 2025), *aff'd,* No. 25-6156, 2025 WL 2965743 (4th Cir. Oct. 21, 2025) (citing cases); *United States v. Burney*, No. CR ELH-15-0305, 2026 WL 1541155, at *13 (D. Md. June 1, 2026) (discussing same); *see also United States v. Rosario-Cruzado*, No. 24-6365, 2025 WL 1540932, at *2 (4th Cir. May 30, 2025) (discussing that, in the context of incapacitated caregivers and guardianship, "[t]his Court and district courts have also referenced the Bureau of Prisons Program Statement for guidance.") (citations and footnote omitted). *But see United States v. Taveras*, 731 F. Supp. 3d 94, 98–99 (D. Mass. 2024) (finding BOP definition "inappropriate" because First Step Act meant to increase compassionate releases).

someone who is suffering from numerous ailments.[7] (ECF No. 192 at p. 11.) Moreover, because she lacks daily assistance, Ms. Foster has not sought the necessary surgery for her medical issues. *Id.* Although Mr. Foster provides documentation of his mother's health condition, ECF No. 186-2, the court is not persuaded that Ms. Foster is "incapacitated" in the manner or to the extent courts commonly require, which is to say, the evidence provided does not support that Ms. Foster is "completely disabled," "cannot carry on any self-care," or "is totally confined to a bed or chair." *See Burney*, 2026 WL 1541155, at *13, *supra*.

While the court appreciates Ms. Foster is in poor health, as far as the court is aware, she has been living at home on her own coping with her ailments for as many as five years (based on Mr. Foster's 2021 administrative request). (ECF No. 204 at pp. 6–7; ECF No. 204-2). Ms. Foster's ability to travel and receive out-of-home care is notable, and the court is not aware that she has stopped receiving this treatment.[8] Moreover, Ms. Foster's letter discussing her status and requesting release of son does not clarify her ailments or describe her conditions beyond Mr. Foster's own contentions. *See* ECF No. 186-2 at p. 2. "[G]eneral claims' from a defendant's mother" are insufficient, and the court is not under the impression Ms. Foster cannot continue to receive treatment or live on her own, at least in the context of releasing Mr. Foster to serve as the

---

[7] Ms. Foster suffers from "Chronic Obstructive Pulmonary Disease (COPD), congestive heart failure, hyperlipidemia, hypertension, arthritis, Gastroesophageal Reflux Disease (GERD), Obstructive Sleep Apnea (OSA), [o]besity, hypoxia, schizoaffective disorder, anxiety, lumbosacral degenerative joint disease with neuroforaminal stenosis, pseudotumor cerebri, and symptoms of polyneuropathy." (ECF No. 192 at p. 11; ECF No. 186-2 at pp. 3–6.)

[8] Ms. Foster has been receiving care from Lower Shore Clinic in Salisbury, Maryland. (ECF No. 186-2.) Mr. Foster argues this care cannot continue based on Ms. Foster's financial inability to continue receiving the care. (ECF No. 192 at p. 14–15.) Although the court appreciates the financial strain and stress that may result from having to receive such care, the court is not persuaded that such circumstances materially affect its analysis on the facts before it. *See, e.g.*, *Burney*, 2026 WL 1541155, at *16 (holding defendant's mother not "incapacitated" despite claim of financially inability to afford assisted living); *United States v. Davis*, No. 6:03-CR-01092-JDA-11, 2025 WL 3062747, at *7 (D.S.C. Nov. 3, 2025) (finding "bare assertion" that assisted living would be financially unsustainable not persuasive toward incapacitation); *United States v. Castle*, No. 2:15-CR-00190-KJM-SCR, 2024 WL 5159628, at *2 (E.D. Cal. Dec. 18, 2024), *aff'd*, No. 25-133, 2025 WL 1894827 (9th Cir. May 28, 2025) (finding "lack of evidence surrounding [defendant's mother's] financial situation and her related ability to afford assisted living or other paid care" unpersuasive under § 1B1.13(b)(3)(C)).

solution. *Bailey*, 2026 WL 100565, at *12 (quoting *United States v. Gross*, No. 1:17-CR-37-HAB, 2024 WL 4100325, at *3 (N.D. Ind. Sept. 5, 2024). "Therefore, an individual does not qualify as incapacitated when the medical conditions impact daily life but do not severely impede functionality." *Id.* at *12.

Courts in and outside of this circuit have considered ailments like Ms. Foster's and similarly found them not to meet the "incapacitation" threshold. *See United States v. Green*, No. 2:23-CR-00008, 2026 WL 1661664, at *2 (W.D. Va. June 8, 2026) (hypertension, chronic obstructive pulmonary disease, pulmonary fibrosis, a vitamin B12 deficiency, hypokalemia, gastroesophageal reflux disease, seasonal allergies, and depression); *United States v. Cobb*, No. CR 18-576-2, 2022 WL 3083034, at *5 (E.D. Pa. Aug. 3, 2022) (hypertension, chronic kidney disease, esophageal reflux, diverticulosis, aortic valve regurgitation, gait instability, osteoarthritis with chronic pain, anxiety, and depression).

Even were the court to find Ms. Foster's ailments left her incapacitated, Mr. Foster has still not shown this circumstance constitutes an extraordinary and compelling reason here because he is not the only available caregiver. Typically, "[i]f a defendant relies on a sole-caregiver argument, 'courts generally require a showing of evidence from several sources indicating that the defendant is the only available caregiver for a family member in dire conditions . . . .'" *Burney*, 2026 WL 1541155, at *15 (quoting *United States v. Polanco-Gonzalez*, VM-17-0688, 2026 WL 177831, at *3 (S.D.N.Y. Jan. 21, 2026)); *see also United States v. Davis*, No. CR 6:03-1092-HMH, 2024 WL 3385138, at *2 (D.S.C. July 12, 2024) (finding that "general representations" demonstrating defendant is only available caregiver, absent actual evidence, is not enough). Effectively, the "inquiry under U.S.S.G. § 1B1.13(b)(3)(C) is not whether the defendant is the optimal caregiver," but rather "whether [he] is the *only available* one." *Burney*, 2026 WL 1541155, at *17 (emphasis

in original).

Mr. Foster's representation that his sisters are unable to provide care for his mother due to their competing family commitments or lack of communication with the family is neither compelling nor persuasicve. (ECF No. 186 at p. 9; ECF No. 192 at p. 13.) There is no record evidence before the court regarding Mr. Foster's representation that his sisters are unable to care for Ms. Foster. It is thus not clear from the record that Mr. Foster is the only available caregiver, as opposed to the preferred or perhaps optimal one. *See Burney*, 2026 WL 1541155, at *17, *supra*. Even crediting Mr. Foster's representations about his sisters, they do not support a finding that his sisters, in particular the one with family needs of her own, are unable to assist Ms. Foster, but rather that it is (understandably) a challenge to do so.[9] Courts in this circuit have readily dismissed alternative caregiver arguments when siblings are a feasible alternative. *See, e.g.*, *id.* at 16–17 (discussing defendant's sisters as alternative caregivers and holding sisters' letters describing their medical conditions do not demonstrate inability to provide care); *United States v. Clack*, No. 5:20-CR-00543-M-2, 2024 WL 4954305, at *4–5 (E.D.N.C. Dec. 3, 2024) (finding unpersuasive defendant's argument that his out-of-state sisters could not care for his mother because defendant "fail[ed] to offer any reason why."); *United States v. Graff*, No. 1:17CR00020-013, 2024 WL 3912947, at *2 (W.D. Va. Aug. 23, 2024) (concluding defendant was not the only available caregiver where brother "liv[ed] too far away" and sister was "estranged").

The Government also raises an additional possible caregiver—Mr. Foster's wife. (ECF No. 204 at p. 6.) Mr. Foster fails to address why his wife may not be able to assist in supporting

[9] Mr. Foster urges the court to follow *United States v. Hicklin*, No. 6:16-CR-2, 2020 WL 7406791 (W.D. Va. Dec. 11, 2020), where the defendant's two siblings were unavailable to offer care. (ECF No. 192 at p. 13.) There, the defendant's siblings were in far different circumstances than Mr. Foster's siblings here, as one was disabled and could not "read, write, or drive[,]" and the other was in a rehabilitation facility. 2020 WL 7406791, at *2. *Hicklin* does not support Mr. Foster's requested relief.

his mother. Courts in this circuit frequently point to failure address, or demonstrate non-availability of, an alternative caregiver known to exist. *See, e.g.*, *United States v. Gammons*, No. 1:21-CR-141-1, 2026 WL 1623131, at *2 (M.D.N.C. June 5, 2026) (finding that defendant, despite the PSR raising the existence of an older sister, "fail[ed] to demonstrate, or even allege in his motion, that he [was] the only available caregiver" and did not "explain why they cannot continue to" be cared for by their current caregiver); *United States v. Dadisman*, No. 2:21-CR-31, 2024 WL 4520348, at *2 (N.D.W. Va. Oct. 17, 2024) (finding that defendant, who disputed that his daughter and brother could be suitable caregivers, failed to address his aunt and his mother's other siblings as alternative caregivers); *United States v. Cooper*, No. 2:16-CR-00022, 2024 WL 2095945, at *4 (S.D.W. Va. May 9, 2024) (finding defendant "failed to present evidence that no other suitable caregivers exist" despite PSR mentioning sister living in same city as parents and other family members living in same state). To be clear, Mr. Foster need not raise every possible individual that might know his mother and have the capacity to care for her, but his wife is an obvious and notable alternative.[10] *See United States v. Ingram*, No. 1:18CR00019-002, 2024 WL 1719932, at *2 (W.D. Va. Apr. 22, 2024) (finding Government's argument for church community to serve as possible caregivers "render[ing] the sole available caregiver test far too broad to have real meaning[]"). "Unwilling individuals are not unavailable; and the fact that it would be difficult for other family members does not equate to unavailability." *Gross*, 2024 WL 4100325, at *3.

For these reasons, the court concludes Mr. Foster has not shown extraordinary and compelling reasons to justify his compassionate release based on the health circumstances of his

[10] Mr. Foster also asserts, based on *United States v. Henriquez*, No. 1:15-CR-225-1, 2021 WL 5771543 (M.D.N.C. Dec. 6, 2021), that "availability of a hired home health aide should be considered when determining if the petitioner is the sole available caregiver." (ECF No. 192 at p. 14.) The court does not suggest that Lower Shore Clinic should or could serve as the principal solution for ongoing aid. But the court does not agree that *Henriquez* stands for this proposition directly. Rather, *Henriquez* recognized that "[defendant]'s mother has daily help for several hours from a home health aide and his sister lives near their parents." 2021 WL 5771543, at *4.

mother. The court will deny his Motion on that basis.

### *2. Rehabilitation Efforts*

While rehabilitation of the defendant "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted," U.S.S.G. § 1B1.13(d), rehabilitation on its own is not enough to qualify as an extraordinary and compelling reason. 28 U.S.C. § 994(t); *see also United States v. Davis*, No. 21-6960, 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022). Cognizant of this limit, Mr. Foster directs the court to a number of out-of-district cases where the court concluded that participation in a gang "drop out" program is beyond normal rehabilitation and, under the U.S.S.G. § 1B1.13(b)(5)'s "other reasons" category, such program participation is an extraordinary and compelling reason on its own. *See, e.g.*, *United States v. Beres*, No. CR 18-58-BLG-SPW-02, 2023 WL 8809320 at * 8 (D. Mont. Dec. 20, 2023); *United States v. Archer*, No. 2:93-CR-259 JCM, 2024 WL 1484025 (D. Nev. Apr. 5, 2024).[11] Because Mr. Foster completed the "Official Drop Program" and voluntarily renounced his former gang affiliation, and provides records in support of same, he argues his efforts constitute an independent extraordinary and compelling reason for compassionate release. (ECF No. 192 at pp. 7–11.)

Courts in and outside of this circuit "have distinguished *Beres*" and determined that "defendants are not entitled to relief when they merely assert, in a conclusory fashion, that they have completed a [gang disassociation program]." *United States v. Campos-Lemus*, No. CR JKB-18-0070, 2026 WL 1295717, at *2 (D. Md. May 12, 2026) (citing cases). "Rather, defendants must provide 'meaningful information' about the [program] and evidence that they face a

[11] *United States v. Archer* did not consider the defendant's gang "drop out" program participation on its own, but rather in conjunction with other factors to form the basis for extraordinary and compelling circumstances. 2024 WL 1484025 at *2–3 (considering defendant's age, term of imprisonment, and medical issues in addition to defendant being in a gang "drop-out yard").

'particular risk' because of participation in the [program]." *Id.* (quoting *United States v. Alston-Currie*, No. 1:13-CR-214-1, 2025 WL 2390537, at *7 (M.D.N.C. Aug. 18, 2025)). By way of example, in *Campos-Lemus*, the court did not find an extraordinary and compelling reason to warrant compassionate release where the defendant "provide[d] no concrete evidence" of the information he stated, had not provided "any particularized account of the information" he shared as a part of the program, and had not alleged his life was threatened. 2026 WL 1295717, at *2. Additionally, in *Alston-Currie*, the court similarly found extraordinary and compelling circumstances were not present where the defendant had not "provided meaningful information about his dropout program, let alone evidence that he faces any particular risk because of his participation in that program." 2025 WL 2390537, at *7. Other courts have rules similarly. *See United States v. Walter*, No. 4:96-CR-00026-SLG, 2025 WL 1040835, at *6 (D. Alaska Apr. 8, 2025) (finding no extraordinary and compelling circumstances where defendant did not demonstrate risk to his life); *United States. v. Defendant*, No. 2:07-CR-01172-JAK-35, 2026 WL 76304, at *4 (C.D. Cal. Jan. 7, 2026) (finding defendant's participation in gang dissociation programming not meeting "similar in gravity" threshold under § 1B1.13(b)(5)).

There can be no doubt that Mr. Foster has made great strides towards rehabilitation and that his participation in the Official Drop Program supports those strides; nonetheless, the record before the court does not support the necessary showing courts in this circuit have required, which is to say, evidence that Mr. Foster faces a particularized serious risk because of his participation in the program. *See Campos-Lemus*, 2026 WL 1295717, at *2, *supra*. The court acknowledges that requiring such information asks a lot of Mr. Foster; however, as the Supreme Court recently recognized, the requirement that reasons be extraordinary and compelling is not an empty requirement, but rather demands circumstances that are the "most unusual," "far from common,"

and "having little or no precedent," as well as "tending to convince or convert by or as if by forcefulness of evidence." *See Fernandez*, 146 S. Ct. at 1302, *supra*.

While the court appreciates the struggle that Mr. Foster's family faces, and commends Mr. Foster on his efforts to improve himself, he does not present extraordinary and compelling reasons for compassionate release. Accordingly, the court "[need] not address the § 3553(a) factors." *Green*, 2026 WL 1661664, at *5 (citations omitted).

## IV. CONCLUSION AND ORDER

For the foregoing reasons, it is this 16th day of October 2026,

**ORDERED** that the Motion (ECF Nos. 186, 192) shall be, and is hereby, **DENIED**.

/S/

______________________________
Julie R. Rubin
United States District Judge